# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL CORNEAL MONGHAN,** | * | |
| Petitioner, | * | |
| | * | CIVIL ACTION NO. 16-00068-WS-B |
| vs. | * | CRIMINAL NO. 08-00114-WS-B |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Respondent. | * | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner Michael Corneal Monghan's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 69). The motion, which was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases, has been fully briefed and is now ready for consideration. In his motion, Monghan raises a single claim, namely that his counsel was ineffective for failing to file a notice of appeal pursuant to his request. (Docs. 69, 74). Upon review of Monghan's petition (doc. 69), the Government's response in opposition (doc. 74), and Monghan's reply (doc. 75), the undersigned determined that an evidentiary hearing was required to resolve Monghan's sole claim that his former trial counsel, Neil Hanley, failed to file a notice of appeal as directed. Based upon the evidence presented at

the evidentiary hearing conducted on April 10, 2017, and upon consideration of Monghan's petition, the Government's response in opposition, the parties' memorandums and supporting documents, and all other pertinent portions of the record, it is recommended that Monghan's petition be **DENIED**[1].

**I. BACKGROUND**

A federal grand jury returned an indictment against Monghan in March 2008, and Neil Hanley was appointed to represent him pursuant to the Criminal Justice Act (hereinafter "CJA"). (Docs. 1, 10). Monghan entered a counseled guilty plea and was convicted of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). (Docs. 22, 23). He was sentenced to 46 months imprisonment, followed by a supervised release term of 8 years. (Doc. 46).

Monghan's supervised released commenced on November 1, 2011, and on February 22, 2012, Probation filed a petition seeking revocation of his supervised release for violating the terms of his supervised release.[2] (Doc. 55). Hanley was again appointed to

---

[1] Monghan also filed a motion seeking a ruling on his petition (Doc. 77). In light of the instant report and recommendation, that motion is **moot.**

[2] Monghan was charged with violating several conditions including that he refrain from the unlawful use of controlled substances, and not

2

represent Monghan, who admitted the violations. (Doc. 52). On March 22, 2012, Monghan's supervised release was revoked, and he was sentenced to 24 months imprisonment followed by a supervised release term of 36 months. (Doc. 53). Monghan's second term of supervised release commenced on November 15, 2013. (Doc. 57). A petition seeking revocation of his second term of supervised release was filed on December 4, 2014. (Id.) [3]. Hanley was once again appointed to represent Monghan, who admitted the violations in the petition. (Doc. 65). On May 11, 2015, Monghan waived his final revocation hearing, and he was sentenced to 46 months imprisonment with no supervised release term to follow. (Docs. 67, 68).

Proceeding *pro se*, Monghan timely filed the instant petition on February 8, 2016.[4] (Doc. 69). Monghan seeks to have his conviction and sentence set aside on the ground of ineffective assistance of counsel. According to Monghan, he "specifically instructed his

---

commit another crime. (Doc. 48).

[3] Monghan was charged with violating several conditions including that he not commit another crime. (Doc. 57).

[4] Under the mailbox rule, absent contrary evidence, a prisoner's motion is deemed filed on the date it is delivered to prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

3

Attorney to file a Notice of Appeal." Monghan further asserts that he " and his family member requested" that his attorney file a notice of appeal, and that he "requested his family member to contact the attorney to affirm that the attorney had filed the appeal." (Doc. 69 at 3). Along with his petition, Monghan submitted an undated, typed affidavit signed by his mother, Nadine Monghan. In the affidavit, Ms. Monghan avers that:

> . . . Two days after Mr. Monghan was sentenced I called Attorney
> Neil L. Hanley and advised him that Mr. Monghan would like
> for him to file a Notice of Appeal. Attorney Hanely advised
> me that he would file the appeal... Although the Attorney
> agreed to file the Appeal he fail to do so."

(Doc. 69 at 18).

In the Government's response in opposition to Monghan's petition, the Government argues that the petition should be denied because Monghan and his family never requested that Hanley file an appeal. (Doc. 74). The Government further contends that Monghan has not reasonably demonstrated that "a rational defendant would want to appeal the revocation sentence or that he otherwise had interest in appealing." (Id.). The Government also submitted the sworn affidavit of Hanley, who asserts that neither Monghan nor any family member directed him to file an appeal. (Doc. 74-1). Hanley avers that while Monghan wrote him in December of 2015 and requested a copy of his file, he made no mention of an appeal nor a request to file a

4

notice of appeal.

Finally, in his reply, Monghan asserts that his mother spoke to Hanley three days after the sentencing and asked him to file the appeal like Monghan had requested, and that Hanley reported that he had filed the appeal and was waiting to hear back from the Eleventh Circuit. (Doc. 75 at 2). Monghan also submitted a written statement that he signed under penalty of perjury. In the statement, Monghan avers that:

> I specifically told my attorney to file a notice of appeal in his case the same day after he was sentenced. Defendant also verified that his mother specifically talked to the attorney 3 day's after sentencing and the attorney agreed to file the [appeal].

(Id. at 4).

Because of conflicting evidence as to whether Monghan or his mother directed Hanley to file an appeal and whether Hanley satisfied his obligations to Monghan with regards to an appeal, an evidentiary hearing was scheduled for April 10, 2017, and CJA panel attorney Gregory Hughes was appointed to represent Monghan at the hearing. (Docs. 79, 82). The hearing was conducted as scheduled, and Monghan, his mother, Nadine Monghan, and Neil Hanley all offered testimony at the hearing.

**I. STANDARDS OF REVIEW**

The Sixth Amendment guarantees criminal defendants a right to

reasonably effective legal assistance. Roe v. Flores-Ortega, 528 U.S. 470, 476, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). To prove ineffective assistance of counsel, petitioners must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which requires a petitioner to show (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness, id. at 687-88, and (2) that counsel's deficient performance prejudiced the petitioner by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694.

It is well-settled that "a lawyer who disregards instructions from his client to appeal has acted in a manner that is professionally unreasonable." Gomez-Diaz v. United States, 433 F. 3d 788, 790 (11th Cir. 2005). If an attorney fails to file an appeal that his client wants filed, prejudice is presumed. Id. at 792. Accordingly, to satisfy the prejudice prong of the Strickland test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed. Id. Moreover, when counsel fails to file a requested appeal, "a defendant is entitled to [a new]

appeal without showing that his appeal would likely have had merit." Flores-Ortega, 528 U.S. at 477 (internal quotes omitted). In other words, "[p]rejudice is presumed." Gomez-Diaz, 433 F.3d at 790. Accordingly, if the Court determines that Hanley failed to honor Monghan's request to file a notice of appeal, it must grant Monghan's § 2255 motion on that ground.[5]

### III. DISCUSSION

As noted *supra*, an evidentiary hearing was conducted on April 10, 2017, and the Court heard conflicting testimony from Monghan, his mother, Nadine Monghan, and his former counsel Neil Hanley. Monghan testified that notwithstanding the assertions in his petition and his written statement signed under penalty of perjury, he never directed Hanley to file an appeal on his behalf. According to Monghan, it was not until he had returned to the facility where he

---

[5] The same principles apply even when the petitioner has signed a limited appeal waiver. *See* Gomez-Diaz, 433 F.3d at 793-94. Specifically, the Eleventh Circuit has held that the general rule that an attorney who disregards instructions from his client to appeal acts in a manner that is per se professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights. Id. at 794. *Cf*. United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005) (noting that, notwithstanding a defendant's guilty plea and waiver of his right to appeal, "If … it is true that [the defendant] explicitly told his lawyer to appeal his case and his lawyer refused, then we are required by Flores-Ortega to conclude that it was deficient performance not to appeal and that [the defendant] was prejudiced.").

7

was being housed, and had discussions with others that he realized that he might have an issue for appeal based on the fact that others thought his sentence seemed "extreme". Monghan testified that he attempted to call Hanley, but was unable to speak to anyone at Hanley's office or leave a message.[6] Thus, the following morning, he called his mother and explained to her that he was illegally sentenced, and asked her to contact Hanley to file an appeal for him. Monghan testified that he spoke with his mother three or four days later, and she indicated that she had spoken to Hanley, who indicated that he would file the appeal if it was not too late to do so. Monghan acknowledged that he did not take any steps to determine whether an appeal had been filed. He further acknowledged that he wrote Hanley a letter, in December of 2015, requesting a copy of his file. According to Monghan, he did not mention the appeal in the letter because, based on discussions with a fellow inmate, he knew the time for filing an appeal had elapsed.

Monghan's mother, Nadine Monghan, testified that she spoke with her son about the possibility of an appeal the morning after his

---

[6] Monghan testified that he discovered that when he was initially sentenced in 2008, his criminal history category was listed as IV, when it should have been III, and that this error was repeated at both of his sentencing hearings when his supervised release was revoked.

sentencing. According to Ms. Monghan, Monghan told her he needed to check something, and then called her back the next day and confirmed that he wanted to file an appeal. Ms. Monghan testified that she spoke directly to Hanley about Monghan's desire to appeal, and that Hanley indicated that he would 'look into it'. Ms. Monghan testified that she contacted Hanley two days later, and he told her that the sentencing judge had given Monghan the proper custodial sentence, and that Monghan would not have any supervised release once he completed his prison term. She further testified that Hanley indicated that he would "try to see what [he] could do", and that the next time she spoke with Hanley, he told her that the time for an appeal had lapsed. On cross-examination, Ms. Monghan testified that the undated affidavit that she signed, wherein she stated that Hanley advised her that he would file the appeal, is not correct.

Neil Hanley testified that he has practiced criminal law for 41 years and has served on the CJA panel since its inception. He further testified that he has represented more than one hundred criminal defendants, that he is fully aware of his obligation to file an appeal when directed to do so by his client, and that it is his standard practice to immediately file an appeal when directed to do so. Hanley explained that filing an appeal is not an onerous task, as it consists of merely filing a one paragraph notice appraising

9

the Court of the defendant's desire to appeal. Hanley testified that neither Monghan nor his mother asked or directed him to file an appeal on Monghan's behalf. Hanley further testified that while he does not remember whether he spoke with Monghan's mother after her son's sentencing, the conversation she described did not occur because he would not have debated the merits of an appeal with her because it was not her case. He would have filed an appeal as requested.

After having carefully listened to the testimony at the evidentiary hearing, observed the witnesses' demeanor and reviewed the record as a whole, the undersigned credits the testimony of Monghan's former counsel, Neil Hanley, that neither Monghan or his mother ever instructed him to file an appeal following his sentence in 2015. First of all, both Monghan and his mother disavowed the written statements that they signed under oath, and submitted in support of Monghan's petition. As noted, in Monghan's statement, signed under penalty of perjury, he states that he "specifically told my attorney to file a notice of appeal in [t]his case the same day after he was sentenced." (Doc. 75 at 4). This directly contradicts his hearing testimony that he never directed Hanley to file an appeal on his behalf. While Monghan testified that someone else prepared the written statement for him, he acknowledged that he read and understood the statement and signed the document under penalty of

perjury.

Similarly, although Monghan's mother submitted a sworn affidavit asserting that she advised Hanley that her son wanted to file an appeal, and he agreed to do so, at the hearing, she indicated that she had a couple of conversations with Hanley about filing an appeal, that he initially told her he would "look into it", that he later told her that Monghan had been sentenced properly, but he would "see what he could do", and that he finally told her that the time for filing an appeal had elapsed. When confronted with the inconsistencies between her affidavit and her hearing testimony, Ms. Monghan testified that during the period in question, she had a lot going on because she had three children incarcerated, and she was traveling back and forth to Boston, Massachusetts because one of them was hospitalized with medical concerns. Based upon Ms. Monghan's affidavit, her hearing testimony, and her demeanor at the hearing, the undersigned finds that while it is possible that Ms. Monghan contacted Hanley at some point, and asked if there was anything he could do to assist in getting her son's sentence reduced, she did not tell Hanley that her son wanted to file an appeal, or anything that would have placed Hanley on notice that Monghan desired to file an appeal. Her assertions to the contrary are simply not credible.

The Court further finds that the testimony of Neil Hanley was

straightforward and entirely consistent with his affidavit. (Doc. 74-1). Hanley has 41 years of experience representing criminal defendants in this district, and has been a member of the CJA panel since its inception. Per his testimony, Hanley has represented over a hundred criminal defendants and is keenly aware of his obligation to file an appeal when requested. He further testified that it is his standard practice to file an appeal immediately upon request as there are significant and well-known consequences for failing to file an appeal when directed to do so by a defendant or his family member. Based on the evidence presented, including the testimony and sworn statements of Hanley, Monghan and Ms. Monghan, the undersigned finds that Hanley's testimony on the subject was credible. Accordingly, the Court is satisfied that neither Monghan nor his mother expressed to Hanley that Monghan desired to appeal, or instructed Hanley to file an appeal on Monghan's behalf. See Gomez-Diaz, 433 F.3d at 792-93.

The Court's finding is buttressed by the fact that at the hearing, Monghan acknowledged that he did not take any steps to determine whether an appeal had been filed, or to determine why Hanley had neglected to file the appeal. Indeed, the record reflects that while Monghan wrote Hanley a letter in December 2015, he did not ask if an appeal had been filed, nor does he seek an explanation for why the appeal was not filed. In the letter, Monghan requests a copy of

his file but makes no mention of an appeal. If, as Monghan contends, Hanley had been directed to file an appeal, it is not reasonable that Monghan would not have questioned why no appeal was filed. The absence of any inquiry by Monghan lends further support to the Court's finding that no request was ever made. Consequently, Monghan has failed to demonstrate that Hanley did not file an appeal as directed.

Although Monghan did not direct Hanley to file an appeal, the Supreme Court has explained that notwithstanding, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Flores-Ortega, 528 U.S. at 480. This inquiry is informed by several "highly relevant" factors, including whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly. . . waived some or all appeals rights. See Otero v. United States, 499 F. 3d 1267, 1270 (11th Cir. 2007)[7].

---

[7] In Otero, the Eleventh Circuit noted that "[A] criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal", because "in some cases, the Sixth Amendment requires consultation; in others, it does not."

In this case, there is no evidence before the Court that Monghan ever reasonably demonstrated to Mr. Hanley that he had a desire to appeal the sentence he received as a result of his second probation revocation. Indeed, the record reflects that Monghan waived his final revocation hearing and admitted to violating his conditions of supervised release. (Doc. 68). He was sentenced to 46 months incarceration, with no supervised release term following his custodial sentence. (Doc. 67). While Monghan now claims that he believes the sentence rendered after the second revocation was excessive, based on a belief that his criminal history category should be considered a III instead of a IV, there is no evidence that Mr. Hanley had any reason to believe that Monghan would want to appeal on this basis or any other.

The record reflects that the criminal history category of IV was contained in the presentence report issued in November 2008 (doc. 28-1), and there is nothing before the Court suggesting that either Monghan or his mother expressed concerns to Hanley about Monghan's criminal history category, which was determined in 2008. Hanley testified that he raised three objections to the presentence report back in 2008, and that while one of his objections was sustained; it did not result in a change to the criminal history category. In

---

Otero, 499 F.3d at 1270.

14

view of such, there is nothing before the Court that suggests that the criminal history category was incorrect or that a rational defendant would have wanted to appeal in 2015 the criminal history category that was determined in 2008.

Likewise, while the testimony at the hearing suggested that both Monghan and Hanley were disappointed that Monghan was not sentenced at the low end of the guideline range following the second revocation of Monghan's supervised release, Hanley testified that the sentence imposed, 46 months, was still below the 60 month maximum, and it obviously took into account the fact that this was Monghan's second revocation. Plus, no supervised release was imposed following expiration of Monghan's sentence. As noted *infra*, the undersigned finds that neither Monghan nor his mother expressed to Hanley a desire to appeal his sentence, and, while it is possible that Monghan's mother at some point asked if Hanley could assist with getting his sentence reduced, such was not sufficient, under the circumstances, to place Hanley on notice that Monghan was interested in appealing. This is particularly true where Monghan was sentenced below the 60 month maximum, and no supervised release was imposed following completion of the sentence. The Court finds, based on these facts, that there is no reasonable basis to believe that a rational defendant would have wanted to appeal. Accordingly, Monghan's petition is due to be

**denied.** It is so recommended. See <u>Gomez-Diaz</u>, 433 F.3d at 792-93; <u>Flores-Ortega</u>, 528 U.S. at 577-580.

**IV. CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED.** 28 U.S.C. § 2255, Rule 11(a) ("[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should be issued [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473,

16

484, 120 S. Ct. 1595, 1604 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394 77 L. Ed. 2d 1090 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); *accord* Miller El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

Monghan's petition does not warrant the issuance of a certificate of appealability as reasonable jurists could not conclude either that this Court is in error in dismissing the instant petition or that Petitioner should be allowed to proceed further. Accordingly, the undersigned recommends that the Court conclude that reasonable jurists could not find it debatable whether Monghan's petition should be dismissed and as a result, he is not entitled to

17

a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, it is recommended that Monghan's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 69) be **DENIED,** that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Michael Corneal Monghan. The undersigned Magistrate Judge further opines that Monghan is not entitled to issuance of a Certificate of Appealability, and as a result, she should not be permitted to appeal *in forma pauperis.*

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions

if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1*.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this **19th** day of **April, 2017.**

                                              **/s/SONJA F. BIVINS**
                                   **UNITED STATES MAGISTRATE JUDGE**